IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| APPLIED MATERIALS, INC., § | | |
| PLAINTIFF, § | | |
| § | | |
| V. § | CAUSE NO. 1:17-CV-519-LY | |
| § | | |
| MUTO TECHNOLOGY, INC., § | | |
| DEFENDANT. § | | |

# MEMORANDUM OPINION AND ORDER REGARDING CLAIMS CONSTRUCTION

Before the court in the above-styled and numbered patent-infringement action are the parties' Joint Claim Construction Statement filed January 26, 2018 (Docs. #29); Plaintiff Applied Materials, Inc.'s and Defendant Muto Technology, Inc.'s Opening Claim Construction Briefs filed February 23, 2018 (Docs. #32 & 33); Applied Materials's and Defendant Muto Technology's Responsive Claim Construction Briefs filed March 23, 2018 (Docs. #34 & 35); Applied Materials's and Muto Technology's Reply Claim Construction Briefs filed April 6, 2018 (Doc. #37 & 36); Applied Materials's and Muto Technology's Opening Post-*Markman* Hearing Briefs filed June 1, 2018 (Docs. #47 & 46); and Applied Materials's and Muto Technology's Responsive Post-*Markman* Hearing Briefs filed June 8, 2018 (Docs. #48 & 49).

The court, through the Special Master, held a claims-construction hearing on May 1, 2018. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). The Report and Recommendations of the Special Master Regarding United States Patent Nos. 7,008,517 and 7,163,607 was filed June 22, 2018 (Doc. #50).[1]

---

[1] For convenience, the court refers to U.S. Patent Nos. 7,008,517 and 7,163,607 as "the '517 Patent" and "the '607 Patent," respectively, and "the Asserted Patents," collectively.

Objections to the report and recommendations were due to be filed on or before July 13, 2018. FED. R. CIV. P. 53(f)(2). Muto Technology filed its Objections to Special Master's Recommended Constructions on July 2, 2018 (Doc. #51). Applied Materials filed its Response to Muto's Objections to Special Master's Report and Recommendation on July 13, 2018 (Doc. #53). As the parties have made objections to the Special Master's factual findings and legal conclusions, the court reviews the record *de novo*. FED. R. CIV. P. 53(f)(3–4). After considering the patents and their prosecution history, the parties' claim-construction briefs, the applicable law, arguments of counsel, and the Special Master's report and recommendations, the court now renders its order with regard to claims construction.

## I. Introduction

Applied Materials, the owner of the Asserted Patents, alleges that Muto Technology infringes claims of the Asserted Patents through making, using, offering for sale, selling or importing infringing products. The '517 Patent relates to a method and apparatus used for physical vapor deposition ("PVD"). The PVD process is a technology in which atoms of conducting material, such as aluminum or titanium nitride, are sputtered from a target of pure material, then deposited on the substrate to create conducting circuitry within an integrated circuit. PVD is generally performed in a sealed chamber filled with plasma formed from a gas. The material to be deposited on the semiconductor substrate is dislodged by the gas and then the dislodged material sticks to the substrate. Claims 1 and 6 of the '517 Patent claim a "shutter disk," which is used to protect surfaces within the PVD chamber from unwanted deposition of materials during chamber-conditioning processes.

The '607 Patent also relates to PVD and is directed to a system or apparatus for supporting a substrate, such as a semiconductor wafer, in a process chamber. Claim 1 of the

'607 Patent recites a "cover ring" which reduces the possibility of stray deposition buildup that may create an unwanted electrical connection.

## II. Legal Principles of Claim Construction

Determining infringement is a two-step process. *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 384 (1996) ("[There are] two elements of a simple patent case, construing the patent and determining whether infringement occurred . . . ."). First, the meaning and scope of the relevant claims must be ascertained. *Id.* Second, the properly construed claims must be compared to the accused device. *Id.* Step one, claim construction, is the current issue before the court.

Claim construction is "'exclusively' for 'the court' to determine." *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 835 (2015) (quoting *Markman*, 517 U.S. at 372). The "words of a claim 'are generally given their ordinary and customary meaning.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Vitronics Corp v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). "[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention . . . ." *Id.* at 1313. The person of ordinary skill in the art is deemed to have read the claim term in the context of the entire patent. *Id.* Therefore, to ascertain the meaning of a claim, a court must look to the claim, the specification, and the patent's prosecution history. *Id.* at 1314–17; *Markman*, 52 F.3d at 979.

Claim language guides the court's construction of a claim term. *Phillips*, 415 F.3d at 1314. "[T]he context in which a term is used in the asserted claim can be highly instructive." *Id.* Other claims, asserted and unasserted, can provide additional instruction because "terms are

3

normally used consistently throughout the patent . . . ." *Id.* Differences among claims, such as additional limitations in dependent claims, can provide further guidance. *Id.* at 1314–15.

Claims must also be read "in view of the specification, of which they are a part." *Markman*, 52 F.3d at 979. "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Phillips*, 415 F.3d at 1315 (quoting *Vitronics*, 90 F.3d at 1582). In the specification, a patentee may define a term to have a meaning that differs from the meaning that the term would otherwise possess. *Id.* at 1316. In such a case, the patentee's lexicography governs. *Id.* The specification may also reveal a patentee's intent to disavow claim scope. *Id.* Such intention is dispositive of claim construction. *Id.* Although the specification may indicate that a certain embodiment is preferred, a particular embodiment appearing in the specification will not be read into the claim when the claim language is broader than the embodiment. *Electro Med. Sys., S.A. v. Cooper Life Scis., Inc.*, 34 F.3d 1048, 1054 (Fed. Cir. 1994).

The prosecution history is another tool to supply the proper context for claim construction because it demonstrates how the inventor understood the invention. *Phillips*, 415 F.3d at 1317. A patentee may also serve as his own lexicographer and define a disputed term in prosecuting a patent. *Home Diagnostics, Inc. v. LifeScan, Inc.*, 381 F.3d 1352, 1356 (Fed. Cir. 2004). Similarly, distinguishing the claimed invention over the prior art during prosecution indicates what a claim does not cover. *Spectrum Int'l, Inc. v. Sterilite Corp.*, 164 F.3d 1372, 1378–79 (Fed. Cir. 1988). The doctrine of prosecution disclaimer precludes a patentee from recapturing a specific meaning that was previously disclaimed during prosecution. *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003). A disclaimer of claim scope

must be clear and unambiguous. *Middleton, Inc. v. 3M Co.*, 311 F.3d 1384, 1388 (Fed. Cir. 2002).

Although "less significant than the intrinsic record in determining the legally operative meaning of claim language," the court may rely on extrinsic evidence to "shed useful light on the relevant art." *Phillips*, 415 F.3d at 1317 (internal quotations omitted). Technical dictionaries and treatises may help the court understand the underlying technology and the manner in which one skilled in the art might use a claim term, but such sources may also provide overly broad definitions or may not be indicative of how a term is used in the patent. *See id.* at 1318. Similarly, expert testimony may aid the court in determining the particular meaning of a term in the pertinent field, but "conclusory, unsupported assertions by experts as to the definition of a claim term are not useful to a court." *Id.* Generally, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms . . . ." *Id.* Extrinsic evidence may be useful when considered in the context of the intrinsic evidence, *id.* at 1319, but it cannot "alter a claim construction dictated by a proper analysis of the intrinsic evidence," *On-Line Techs., Inc. v. Bodenseewerk Perkin-Elmer GmbH*, 386 F.3d 1133, 1139 (Fed. Cir. 2004). To the extent the court "make[s] subsidiary factual findings about th[e] extrinsic evidence," the court construes the claims in light of those factual findings. *Teva*, 135 S. Ct. at 841.

## III. Discussion

### A. Recommendations

The Special Master recommends the following constructions of the claim terms:

| Claim Term | Recommended Construction |
|---|---|
| "the lip extending below the center pad"<br><br>['517 Patent, Claims 1 and 6] | Plain and ordinary meaning. |
| Preambles: "A shutter disk for covering a substrate support in a physical vapor deposition chamber comprising:"<br><br>['517 Patent, Claims 1 and 6] | Plain and ordinary meaning.<br><br>The preambles limit the claim scope. |
| "cover ring"<br><br>['607 Patent, Claim 1] | Plain and ordinary meaning.<br><br>"cover ring" is a limitation, not an intended use[2] |
| "a notch formed therebetween extending into the body from the lower surface"<br><br>['607 Patent, Claim 5] | Plain and ordinary meaning.<br><br>Figure 3 from the '607 Patent should be included as part of this claim construction. |

The parties agree to the construction of two claim terms. The court adopts the agreed construction of those terms, as listed in the table below.[3]

---

[2] In the report and recommendation, the phrase "'cover ring' is a limitation, not an intended use" appears alongside the claim term "a notch formed therebetween extending into the body from the lower surface." After reviewing the report and recommendation, the court finds that the Special Master intends this phrase to apply to the "cover ring" term.

[3] Throughout, the **bolded** claim terms indicate the court's adopted construction.

6

| Claim Term | Agreed Construction |
|---|---|
| "a recess formed in the center pad coaxially with the disk body"<br><br>['517 Patent, Claim 1] | **An indentation formed in the center pad coaxially with the disk body.** |
| Preamble: "A process kit comprising:"<br><br>['607 Patent, Claim 1] | **Not limiting.** |

The Special Master also recommends that a person of ordinary skill in the art be defined as a person with an undergraduate degree in chemical, mechanical, or electrical engineering, or material science, and has three to five years' experience designing semiconductor-manufacturing equipment. The person of ordinary skill in the art would also have experience addressing issues relating to unwanted depositions of materials on components of PVD chambers. The parties have not objected to this definition. The court therefore adopts this definition.

*B.   Constructions*

1. "the lip extending below the center pad"

The parties dispute the meaning of this term as it is used in Claims 1 and 6 of the '517 Patent. The Special Master recommends that no construction of this term is necessary because it is used in accordance with its plain and ordinary meaning. This accords with Applied Materials's proposed construction. Muto Technology objects, arguing that there is a fundamental dispute over the claims' scope and that the phrase's plain meaning does not support the limitation's purpose. Muto Technology proposes the following construction: "the entire

bottom surface of the lip is at a lower horizontal position than any portion of the bottom surface of the center pad."[4]

Muto Technology argues that the court must construe this term to resolve a fundamental dispute over the scope of the claim. *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1361 (Fed. Cir. 2008) ("A determination that a claim term 'needs no construction' or has the 'plain and ordinary meaning' may be inadequate . . . when reliance on a term's 'ordinary' meaning does not resolve the parties' dispute."). Specifically, Muto Technology asserts that it is unclear whether the term encompasses a product designed such that the lip does not extend below the center pad, but, in practice, does due to manufacturing imperfections. However, Muto Technology also asserts that "one of ordinary skill in the art would know that tolerances when manufacturing mechanical components are unavoidable." Because one skilled in the art would understand that manufacturing imperfections will alter the spatial relationship between the center pad and the lip in practice, such an understanding need not be made explicit in the claim construction. *See Phillips*, 415 F.3d at 1313 ("[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art . . . ."). Because the plain and ordinary meaning of the claim term accounts for variations caused by mechanical tolerances, the court finds that there is no genuine dispute over claim scope that necessitates construction.

Muto Technology next argues that, without construction, the claim term is indefinite. However, this argument, too, is predicated on uncertainty arising from manufacturing imprecision. Because, as Muto Technology concedes, a person of ordinary skill in the art would

---

[4] Throughout its briefs and at the claims-construction hearing, Muto Technology's proposed construction concluded with the additional clause "within normal manufacturing tolerances." However, Muto Technology agreed to drop this clause in its Objections to Special Master's Recommended Constructions (Doc. #51).

factor manufacturing tolerances into one's understanding of the invention, the claim adequately "inform[s] those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S.Ct. 2120, 2129 (2014).

Finally, Muto Technology alleges that the plain and ordinary meaning of the term does not support the lip-height limitation's purpose of "provid[ing] separation between the disk body [] and substrate support []." '517 Patent, 9:11–12; *see also* figs. 5–6. However, Muto Technology does not explain how the plain language of the term describes an invention that fails to fulfill this purpose. On the contrary, Claims 1 and 6 both recite a shutter disk that includes, among other elements, a disk body with a center pad extending from the body's lower surface and a lip extending below the center pad. *Id.* at 9:42–53, 9:62–10:5. With this language alone, a person of ordinary skill in the art would understand that the lip forms the lowermost surface of the shutter disk, and therefore maintains the requisite space between the disk body and substrate support.

Accordingly, Muto Technology's objections are OVERRULED. The court ACCEPTS and ADOPTS the Special Master's recommendation, and concludes that **no construction of the claim term is necessary**.

2. Preamble: "A shutter disk for covering a substrate support in a physical vapor deposition chamber comprising:"

The parties dispute whether the preambles of Claims 1 and 6 of the '517 Patent limit the scope of the claims. The Special Master recommends that the preambles be given their plain and

ordinary meaning and that they limit the claim scope. Neither party objects to this construction.[5] The court agrees with the Special Master.

Whether a preamble limits the scope of a claim is determined by reviewing the facts of each case to understand what the inventors understood the scope of the invention to be. *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002). Accordingly, "a preamble limits the invention . . . if it is 'necessary to give life, meaning and vitality' to the claim." *Id.* (quoting *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1305 (Fed. Cir. 1999)). In applying this standard, the Federal Circuit has looked to the patent's specification to determine whether the inventor considered the preamble language a necessary characteristic of the invention. *See, e.g., Deere & Co. v. Bush Hog, LLC*, 703 F.3d 1349, 1358 (Fed. Cir. 2012) (concluding "rotary cutting deck" preamble was limitation because specification repeatedly and consistently referred to invention as deck for rotary cutter); *Proveris Sci. Corp. v. Innovasystems, Inc.*, 739 F.3d 1367, 1373 (Fed. Cir. 2014) (concluding preamble was limitation because it was "the only reference in any independent claim" to inventive concept described in specification); *Poly-America, L.P. v. GSE Lining Tech., Inc.*, 383 F.3d 1303, 1310 (Fed. Cir. 2004) (concluding preamble was limitation because "specification [was] replete with references to the invention" as that described in preamble).

Here, the preamble limits the claim because it describes what the inventor understands his invention to be—a shutter disk for use in a PVD chamber. Every mention of a shutter disk in the specification appears in relation to its use in PVD. *E.g.*, '517 Patent, 8:44–47 ("The shutter disk . . . may be fabricated from materials suitable for use in a PVD chamber . . . ."); *id.* at 9:28–31

---

[5] Although Muto Technology argued against this construction throughout its briefs, it made no objection to the construction in its Objections to Special Master's Recommended Constructions (Doc. #51).

("[E]mbodiments of the invention . . . describe a shutter disk mechanism that advantageously facilitates protection of a substrate support during [PVD] conditioning processes."). Furthermore, the Summary of the Invention describes "the present invention" as "a method and apparatus for use in a physical vapor deposition chamber." *Id.* at 2:36–37. "When a patent thus describes the features of the 'present invention' as a whole, this description limits the scope of the invention." *Verizon Servs. Corp. v. Vonage Holdings Corp.*, 506 F.3d 1295, 1308 (Fed. Cir. 2007). The specification also identifies "a need for a PVD processing chamber having an improved shutter disk sensing system" as motivating the invention. '517 Patent, 2:31–32. Even the '517 Patent's title—"Shutter Disk and Blade for Physical Vapor Deposition Chamber"—demonstrates that the inventor understood his invention to be limited to PVD applications. In sum, the specification indicates that the preambles of Claims 1 and 6 are not simply a "purpose or intended use for the invention," but are "necessary to give life, meaning and vitality to the claim." *Catalina Mktg.*, 289 F.3d at 808.

Muto Technology argues that the preambles should not be construed as claim limitations because they do not fall into one of three categories: preambles relied upon to distinguish prior art during prosecution, preambles reciting essential structure, or preambles providing an antecedent basis for any claim term. *See id.* at 808–09. The court agrees that the preambles of Claims 1 and 6 do not fit any of these categories.[6] However, the court is mindful of the Federal Circuit's instruction that "[n]o litmus test defines when a preamble limits claim scope." *Id.* at 808. The *Catalina Marketing* court characterizes the situations enumerated by Muto Technology

---

[6] Applied Materials argues that the Examiner's statements regarding allowance of Claims 1 and 6 show that the preambles were used to distinguish prior art during prosecution. However, the Examiner simply restated the claim language, with no elaboration on the reason for allowance. These statements hardly constitute "clear reliance on the preamble during prosecution to distinguish the claimed invention from the prior art." *Catalina Mktg.*, 289 F.3d at 808.

as "guideposts," not strict rules. *Id.* Here, the court finds that the specification demonstrates that the preambles reflect a limitation implicit in "what the inventors actually invented and intended to encompass by the claim." *Id.* (internal quotation marks omitted).

Therefore, the court ACCEPTS and ADOPTS the Special Master's recommendation, and concludes that the preambles of Claims 1 and 6 of the '517 Patent **limit the claim scope**.

3. "cover ring"

The parties dispute whether this term, as used in Claim 1 of the '607 Patent, recites structure or an intended use. The Special Master recommends that this term be given its plain and ordinary meaning, and be considered a claim limitation. Neither party objects.[7] The court agrees that the term should be given its plain and ordinary meaning, but declines to construe the term as a claim limitation.

Throughout its briefs and at the claims-construction hearing, Muto Technology argued that the term "cover ring" describes only an intended use for the claimed structure. Muto Technology contends that an intended use for an apparatus claim has no patentable weight and should not be considered a limitation.

Muto Technology relies on the reasoning of *In re Schreiber*, in which the Federal Circuit notes that "[i]t is well settled that the recitation of a new intended use for an old product does not make a claim to that old product patentable." 128 F.3d 1473, 1477 (Fed. Cir. 1997). A new use "does not have patentable weight if the structure is already known." *Id.* Throughout its briefs, Muto Technology cites several additional cases reiterating this principle. However, the issue of patentable weight goes to claim validity, not scope.

---

[7] Muto Technology argued against construing the term to be a claim limitation throughout its briefs and at the claims-construction hearing. However, it made no objection to the construction in its Objections to Special Master's Recommended Constructions (Doc. #51).

Significantly, all but one of the cases cited by Muto Technology, including *Schreiber*, discuss patentable weight in the context of patent validity. *See id.* at 1474 (affirming final rejection of claims by United States Patent and Trademark Office); *In re Chudik*, 706 Fed. App'x 670, 671 (Fed. Cir. 2017) (affirming Patent Trial and Appeal Board's determination that claims were anticipated by prior art); *Hewlett-Packard Co. v. Bausch & Lomb Inc.*, 909 F.2d 1464, 1467–68 (Fed. Cir. 1990) (affirming district court's conclusion that claim was non-obvious); *In re Hack*, 245 F.2d 246, 246 (C.C.P.A. 1957) (appealing final rejection of claims); *In re Benner*, 174 F.2d 938, 938 (C.C.P.A. 1949) (same); *AstraZeneca LP v. Apotex, Inc.*, 623 F. Supp. 2d 579, 587–92 (D. N.J. 2009) (analyzing validity in determining whether to issue preliminary injunction).

Muto Technology also cites *Watson & Chalin Manufacturing, Inc. v. Boler Co.*, in which the court examined patentable weight at the claims-construction stage. 227 F. Supp. 2d 633, 638–39 (E.D. Tex. 2002). However, other district courts conclude that determining patentable weight during claim construction is inappropriate. *E.g.*, *GPNE Corp. v. Apple, Inc.*, No. 12-CV-02885-LHK, 2013 WL 4446819, at *19 (N.D. Cal. Aug. 13, 2013) ("[T]he Court rejects Defendants' patentable weight argument because it does not appear to be an issue of claim construction . . . ."); *Freeman v. Gerber Prods. Co.*, 357 F. Supp. 2d 1290, 1296 n.2 (D. Kan. 2005) ("Patentability . . . is not at issue here; rather, the issue here is claim construction.").

This court is not convinced that patentable weight is appropriately raised during claim construction. At this juncture in the proceedings, validity is not at issue, and the court declines to determine whether "cover ring" is a claim limitation of patentable weight.

Therefore, the Court ACCEPTS and ADOPTS the Special Master's recommendation as modified, and concludes that **no construction of the claim term is necessary**.

4. "a notch formed therebetween extending into the body from the lower surface"

The parties dispute the meaning of this term as it is used in Claim 5 of the '607 Patent. The Special Master recommends that this term be accorded its plain and ordinary meaning and that Figure 3 of the '607 Patent be included with the construction. Muto Technology objects that the term is indefinite if given its plain and ordinary meaning, and alternatively proposes that the term be construed to mean "an indentation in the lower surface between the inner ring and the cylindrical inner flange." The court agrees that the term should be given its plain and ordinary meaning, but rejects the recommendation to include Figure 3 in its claim construction.

First, Muto Technology argues that reliance on Figure 3 of the '607 Patent by Applied Materials and the Special Master signifies that Claim 5, standing alone, is indefinite. However, use of a patent's written description or drawings to demonstrate consistency between the specification and the plain meaning of a claim does not run afoul of the indefiniteness standard. On the contrary, claim terms should be "read in light of the specification" when determining whether they "fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus*, 134 S. Ct. at 2124.

Second, Muto Technology asserts that the claim is indefinite because it is unclear how the notch can extend "into the body" while simultaneously being "formed therebetween" the inner ring, bridge, and body. The court finds no inconsistency in this combination. The preposition "therebetween" describes the location of the notch, and the phrase "extending into" denotes the direction in which the notch is formed. In fact, as Applied Materials notes, a notch could be formed between the inner ring, bridge, and body, but extend into the body from the upper surface—a design outside the scope of Claim 5. Therefore describing the notch as

between three structures and extending into one of those structures clarifies the claim scope, rather than injecting ambiguity as alleged by Muto Technology.

Finally, Muto Technology argues that the Special Master's recommendation that Figure 3 be included in the construction exposes the need for construction beyond the ordinary meaning. *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1367 (Fed. Cir. 2002) ("[A] claim term will not have its ordinary meaning if the term 'chosen by the patentee so deprive[s] the claim of clarity' as to require resort to other intrinsic evidence for a definite meaning." (quoting *Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985, 990 (Fed. Cir. 1999) (alteration in original)). However, demonstrating a patent specification's consistency with the plain and ordinary meaning of a claim does not show that the claim is so ambiguous as to "*require* resort to other intrinsic evidence for a definite meaning." *Id.* (emphasis added).

Well-settled principles of claim construction counsel against including Figure 3 of the '607 Patent in the court's construction of this term. The Federal Circuit has "expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment." *Phillips*, 415 F.3d at 1323. Yet the specification explicitly describes the cover ring depicted in Figure 3 as only an embodiment. '517 Patent, 7:15–28 ("In one embodiment, the cover ring 268 includes . . . ."). Inclusion of Figure 3 in the court's claim construction improperly suggests that Claim 5 is limited to the structure depicted in Figure 3.

Accordingly, Muto Technology's objections are OVERRULED. The court ACCEPTS and ADOPTS the Special Master's recommendation as modified, and concludes that **no construction of the claim term is necessary.**

C. *Summary Table of Agreed and Disputed Terms*

| Term | Court's Construction |
|---|---|
| "a recess formed in the center pad coaxially with the disk body"<br><br>['517 Patent, Claim 1] | **An indentation formed in the center pad coaxially with the disk body.** |
| Preamble: "A process kit comprising:"<br><br>['607 Patent, Claim 1] | **Not limiting.** |
| "the lip extending below the center pad"<br><br>['517 Patent, Claims 1 and 6] | **No construction necessary.** |
| Preamble: "A shutter disk for covering a substrate support in a physical vapor deposition chamber comprising:"<br><br>['517 Patent, Claims 1 and 6] | **Preambles limit claim scope.** |
| "cover ring"<br><br>['607 Patent, Claim 1] | **No construction necessary.** |
| "a notch formed therebetween extending into the body from the lower surface"<br><br>['607 Patent, Claim 5] | **No construction necessary.** |

IV. **Conclusion**

For the above reasons, **IT IS ORDERED** that Muto Technology's Objections to Special Master's Recommended Constructions filed July 2, 2018 (Doc. #51) are **OVERRULED**.

**IT IS FURTHER ORDERED** that the Report and Recommendations of the Special Master Regarding United States Patent Nos. 7,008,517 and 7,163,607 filed June 22, 2018 (Doc. #50) is **ACCEPTED AS MODIFIED**, as the court declines to construe "cover ring" as a claim

limitation of patentable weight and rejects the recommendation to include Figure 3 in its construction of "a notch formed therebetween extending into the body from the lower surface." No other claim terms require construction.

**IT IS FINALLY ORDERED** that this case is set for a **Scheduling Conference** on February 15, 2019, at 9:30a.m., in Courtroom 7, Seventh Floor, United States Courthouse, 501 W. 5th Street, Austin, Texas 78701. The parties shall meet and confer in advance of that date in an attempt to settle this case. If the case is not settled, the parties shall confer in an attempt to reach agreement on a schedule to follow for the remainder of this case. The court will render a Scheduling Order as a result of the February 15 conference.

SIGNED this 30th day of November, 2018.

_____
LEE YEAKEL
UNITED STATES DISTRICT JUDGE